IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YOLONDA DICKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-657-RGA-MPT |
| | ) |
| KEYPOINT GOVERNMENT | ) |
| SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

I.  **INTRODUCTION**

On August 1, 2016, Yolonda Dickerson ("plaintiff") filed this action against KeyPoint Government Solutions, Inc. ("defendant"), alleging adverse actions amounting to discrimination and retaliation prohibited under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964.[1] Plaintiff was employed by defendant from March 24, 2008 to April 16, 2014.[2] During her employment, plaintiff filed her first Charge of Discrimination with the EEOC on October 22, 2012 ("the 2012 Charge"). She filed her second Charge of Discrimination on July 29, 2014 after her termination ("the 2014 Charge").[3]

On September 2, 2016, defendant filed its Answer to the Complaint and shortly thereafter a scheduling order was issued, setting November 18, 2016 as the final day to

---

[1] D.I. 1.
[2] *Id.* at ¶ 5.
[3] *Id.* at ¶ 11.

amend or supplement the pleadings.[4]  Defendant served plaintiff with interrogatories on September 30, 2016, which she responded to on November 7, 2016.[5]  In pertinent part, defendant asked plaintiff "to identify all alleged adverse actions she suffered," and plaintiff responded with "[t]he Complaint speaks for itself."[6]  Plaintiff was deposed twice: first on November 18, 2016 and later on December 9, 2016.[7]  During these depositions, defendant sought to glean the adverse actions on which plaintiff based her discrimination claims.[8]

Pending before the court is defendant's motion for leave to amend its Answer to the Complaint under FED. R. CIV. P. 15(a) and 16(b) due to the exclusion of plaintiff's deposition statement ("assigning me work and receiving other's work") from her EEOC Charges of Discrimination.[9]  Defendant contends such exclusion proves plaintiff's failure to exhaust administrative remedies and therefore wishes to amend its Answer to include the affirmative defense of failure to exhaust administrative remedies.[10]  This Report and Recommendation addresses whether amendment of the Answer would be futile under FED. R. CIV. P. 15(a) and whether good cause exists under FED. R. CIV. P. 16(b).  For the reasons stated below, it is recommended that the defendant's motion be denied.

## II.  BACKGROUND

---

[4] D.I. 34 at 2.
[5] *Id.*
[6] *Id.*; *see also id.* at Ex. A, ¶¶ 7-8.
[7] *Id.*
[8] *Id.*; *see also* D.I. 36 at 2.
[9] D.I. 34 at Ex. B.
[10] *See generally* D.I. 34.

Plaintiff worked as a Background Investigator and then as an Investigative Field Trainer for defendant from March 2008 to April 2014.[11] Her positions with defendant required her to spend many hours writing and typing and, in March 2011, she began experiencing pain in her fingers, hands, wrists, and arms.[12] Later that month, she was diagnosed with work-related Carpal Tunnel Syndrome in both wrists.[13] Her doctor prescribed physical therapy sessions and suggested an ergonomic keyboard, mouse, and wrist braces for work.[14] Plaintiff reported her disability to her Field Manager on the same day of her diagnosis and requested reimbursement for the ergonomic keyboard and mouse suggested by her doctor.[15] She began physical therapy the following day, where her physical therapist confirmed her Carpal Tunnel Syndrome.[16] Her physical therapist similarly recommended she obtain ergonomic equipment to update her workstation.[17] Ultimately, plaintiff never received a response regarding her reimbursement request.[18]

On November 22, 2011, plaintiff submitted documentation from her doctor recommending defendant put plaintiff on light duty status at work for approximately a month[19] On November 28, 2011, plaintiff received notice that her accommodation requests were denied and was placed on leave until she could return to full duty.[20] On

---

[11] D.I. 1 at ¶¶ 5, 10.
[12] *Id.* at ¶¶ 12-13.
[13] *Id.* at ¶ 14.
[14] *Id.*
[15] *Id.* ¶¶ 15-16.
[16] *Id.* ¶ 17.
[17] *Id.*
[18] *Id.* at ¶¶ 18-19.
[19] *Id.* at ¶ 20.
[20] *Id.* at ¶ 21.

3

December 20, 2011, shortly after her return from disability leave, plaintiff was informed that she was being sent on a temporary duty assignment in January 2012.[21] Plaintiff argued she could not go on the assignment because of her continuing medical treatment.[22] She was required to provide documentation proving her medical treatment. Plaintiff asserts a Caucasian coworker was excused from a similar assignment without being required to provide such documentation.[23]

Around March 2012, plaintiff began receiving fewer assignments from defendant without explanation.[24] Subsequently, in the September 2013 time frame, plaintiff began to receive several work assignments outside her designated geographic work area.[25] Most of these work assignments were for geographic areas allocated to her Caucasian male coworkers.[26] Sometimes plaintiff was not given notice of changed deadlines or was given significantly shorter deadlines than those of her coworkers.[27] These assignments outside her designated geographic area were in addition to plaintiff's regular workload.[28] Further, plaintiff claims she was not afforded the relief of reassignment of cases, although her male colleagues were.[29]

---

[21] *Id.* at ¶ 23.
[22] *Id.*
[23] *Id.* at ¶¶ 23-24.
[24] *Id.* at ¶ 25.
[25] *Id.* at ¶¶ 40-52. *See also* D.I. 35 at Ex. E ("Investigators worked in specific geographic areas. The amount of Investigators working on a particular case were minimized as much as possible to ensure the integrity of the case. Therefore, once an Investigator was assigned to a case, he/she received all items on that case that needed to be completed in his/her area.").
[26] D.I. 1 at ¶¶ 40-52.
[27] *Id.* at ¶ 46.
[28] *Id.* at ¶ 50.
[29] *Id.* at ¶ 51.

4

In April 2014, plaintiff was reassigned to Delaware, which had fewer work assignments than Maryland, and was also notified that her pay would be decreased by $3.81 per hour.[30] On April 16, 2014, two days after plaintiff approached defendant about her reassignment and pay decrease, she was terminated.[31]

On August 5, 2015, defendant submitted a position statement regarding plaintiff's 2014 Charge, which acknowledged plaintiff's complaints of her growing geographic coverage and moved deadlines.[32] On October 28, 2015, plaintiff submitted her response ("Rebuttal Letter"), which discussed in depth her complaints regarding assignment to her of coworkers' work, resulting in her being overworked.[33]

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[34] "The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities."[35] The United States Supreme Court has stated that although:

---

[30] *Id.* at ¶ 30.
[31] *Id.* at ¶ 31.
[32] D.I. 35 at 3.
[33] *Id.*
[34] FED. R. CIV. P. 15(a)(2).
[35] *Leader Techs., Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, 2010 WL 2545959, at *3 (D. Del. June 24, 2010) (citing *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)). Whether to grant or deny "a motion to amend a pleading under Rule 15(a) is a procedural matter governed by the law of the regional circuit." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1357 (Fed. Cir. 2009)).

the grant or denial of an opportunity to amend is within the discretion of
the District Court . . . , [i]n the absence of any apparent or declared
reason–such as undue delay, bad faith or dilatory motive on the part of the
movant, . . . undue prejudice to the opposing party by virtue of allowance
of the amendment, futility of the amendment, etc.–the leave sought
should, as the rules require, be "freely given."[36]

An amendment is futile "if it is frivolous, fails to state a claim upon which relief can be granted, or 'advances a claim or defense that is legally insufficient on its face.'"[37]

"If a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is also implicated."[38] Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."[39] "After a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend."[40] "Good cause" exists if the Schedule "cannot reasonably be met despite the diligence of the party seeking the extension."[41] "'In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party.'"[42]

## IV. DISCUSSION

### A. FUTILITY OF AMENDMENT

---

[36] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[37] *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, C.A. No. 07-351-JJF, 2010 WL 2898286, at *1 (D. Del. July 20, 2010) (quoting *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006)).
[38] *ICU Med., Inc. v. Rymed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009).
[39] FED. R. CIV. P. 16(b)(4).
[40] *ICU Med.*, 674 F. Supp. 2d at 577 (citing *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)).
[41] FED. R. CIV. P. 16(b)(4) Advisory Committee's Notes (1983 Amendments).
[42] *ICU Med.*, 674 F. Supp. 2d at 577-78 (quoting *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009)).

A motion to amend should be granted in the absence of a showing of "undue delay," "bad faith or dilatory motive on the part of the movant," "undue prejudice to the opposing party by virtue of allowance of the amendment," or "futility of the amendment."[43]

Plaintiff argues amendment of the Answer to the Complaint would be futile because the affirmative defense of failure to exhaust administrative remedies is legally insufficient on its face.[44] Under the ADA and Title VII, a plaintiff has exhausted her administrative remedies when "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."[45] Plaintiff contends the allegations of receiving too many assignments and work transferred from coworkers were contained within the 2014 Charge and Rebuttal Letter; therefore, plaintiff argues, these allegations were fairly within the scope of the prior EEOC complaint, or the subsequent investigation.[46]

Overloading plaintiff with work and receiving assignments of her coworkers are fairly within the scope of the prior EEOC complaints. The 2014 Charge is the most relevant Charge of Discrimination because plaintiff's claims of being overworked begin in 2013–after the 2012 Charge was filed.[47] The 2014 Charge notes, "she has been targeted for adverse client/region assignments which increase her driving time thereby reducing the work time available to complete the assignments which results in the

---

[43] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[44] D.I. 35 at 9.
[45] *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 553 (D. Del. 2012) (quoting *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719-20 (D. Del. 2008)).
[46] D.I. 35 at 9.
[47] *Compare* D.I. 1 at 5 *with* D.I. 1 at 7-10.

7

inevitable reduced productivity."[48]  Plaintiff's claims she was overworked and received her coworkers' assignments could reasonably have been "expected to grow" from the 2014 Charge claiming "adverse client/region assignments."[49]

While defendant argues under Pierson v. Washington Metro. Area Transit Auth. that plaintiff too heavily relies on her Rebuttal Letter, defendant misapplies Pierson's analysis.[50]  Although plaintiff argues defendant knew of the adverse actions at issue because of the Rebuttal Letter, this is neither determinative nor fatal.[51]  Similar to the non-hire retaliation claim that "grew out" of the plaintiff's EEOC charge in Pierson, plaintiff's claims that she was overworked after receiving her coworkers' assignments arises from her EEOC 2014 Charge.[52]  Specifically, plaintiff's claims of "receiving too many assignments . . . and assignments transferred from co-workers" are reasonably expected to grow out of her claim of "adverse client/region assignments" because her work relied on assigning employees cases based on designated geographic areas.[53]  Therefore, defendant's affirmative defense fails for futility.

### B. GOOD CAUSE

Good cause exists "when the schedule cannot reasonably be met despite the diligence of the party seeking the extension."[54]  "Unlike leave to amend under Rule

---

[48] D.I. 34 at Ex. D.
[49] Id.; Ostapowicz v. Johnson Bronze Co., 541 F.2d 364, 399 (3d. Cir. 1976).
[50] D.I. 36 at 3.  See also Pierson v. Washington Metro. Area Transit Auth., 821 F. Supp. 2d 360 (D.D.C. 2011).
[51] See D.I. 35 at 7-9.
[52] Compare Pierson, 821 F.Supp.2d at 366-367 with D.I. 1 at 7-10; D.I. 35 at Ex. E.
[53] D.I. 34 at 2; Ex. D.
[54] Bigband Networks Inc. v. Imagine Commc'ns, Inc., C.A. No. 07-351-JJF, 2010 WL 2898286, at *2 (D. Del. July 20, 2010) (citing FED. R. CIV. P. 16(b)(4)).

15(a) which focuses on prejudice to the nonmovant, the good cause standard under Rule 16(b) turns on the diligence of the movant."[55] Defendant filed this motion less than two months after plaintiff's deposition.[56] This court finds that defendant was diligent in pursuing its amendments because they were filed within a reasonable time after plaintiff's deposition.[57]

While the standard of good cause under FED. R. CIV. P. 16(b) may be met in this case, defendant faces a futility issue under FED. R. CIV. P. 15(a). Because both FED. R. CIV. P. 15(a) and 16(b) must be met for leave to amend the Answer to be granted, the motion should be denied.

## V. CONCLUSION

For the foregoing reasons, I recommend that Defendant's motion for leave to amend its Answer to the Complaint (D.I. 33) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: June 7, 2017                                           /s/ Mary Pat Thynge

---

[55] *Id.* (citing *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009)).
[56] D.I. 36 at 2.
[57] *Id.*

United States Magistrate Judge