IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

YOLANDA DICKERSON,

    Plaintiff,

v.

KEYPOINT GOVERNMENT
SOLUTIONS, INC.,

    Defendant.

Civil Action No. 16-657-RGA

### MEMORANDUM

Presently pending before the Court are cross-motions for summary judgment filed by Plaintiff and Defendant. (D.I. 53, D.I. 55). The Magistrate Judge has filed a Report and Recommendation, which recommends granting summary judgment to Defendant. (D.I. 68). Plaintiff has filed objections, to which Defendant has responded. (D.I. 77, 78). I review the objections to the Report and Recommendation *de novo*. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). For the reasons that follow, I overrule Plaintiff's objections (D.I. 77) and adopt the Magistrate Judge's Report and Recommendation (D.I. 68).

### I. BACKGROUND

From March 24, 2008, to April 16, 2014, Yolanda Dickerson, Plaintiff, was employed by KeyPoint Government Solutions, Inc., Defendant, a company that provides employment-screening services to government agencies through field investigators. (D.I. 1; D.I. 57-1, Exh. A at 29-30). Plaintiff worked as a level I field investigator. (D.I. 56 at 3). Investigators are usually assigned to work close to where they live but are on occasion asked to undertake temporary duty

1

("TDY") assignments outside their regular work areas. (D.I. 54 at 3; D.I. 57-1, Exh. A at 122-41). As part of her job, Plaintiff was required to to spend many hours writing and typing, and in March 2011, she began to experience pain in her fingers, hands, wrists, and arms. (D.I. 57-1, Exh. D). On March 17, 2011, she was diagnosed with work-related Carpal Tunnel Syndrome in her wrists. (D.I. 56 at 3).

During her employment, Plaintiff, an African American woman, filed a first Charge of Discrimination with the Equal Employment Opportunity Commission on November 9, 2012. (D.I. 57-1, Exh. J). She filed a second charge on July 29, 2014, after her termination. (D.I. 58-5, Exh. NN). Then, on August 1, 2016, Plaintiff filed a complaint against Defendant, alleging adverse actions amounting to discrimination and retaliation prohibited under the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. (D.I. 1).

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49 (1986).

Claims under the Americans with Disabilities Act and Title VII are evaluated under a burden-shifting analysis. *Mowafy v. Noramco of Delaware, Inc.*, 620 F. Supp. 2d 603, 611 (D. Del. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, a plaintiff

must establish a prima facie case of discrimination or retaliation. *Id.* (citing *McDonnell*, 411 U.S. at 802); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Once the plaintiff has established a prima facie case, the defendant must articulate a "legitimate, non-discriminatory" or "non-retaliatory" reason for its conduct. *Mowafy*, 620 F. Supp. 2d at 611; *Krouse*, 126 F.3d at 500-01. Then, the burden shifts back to the plaintiff, who "must demonstrate that the reasons articulated by the defendant are merely a pretext for discrimination" or "retaliation." *Id.* at 611-12 (quoting *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Krouse*, 126 F.3d at 501 ("If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.").

To establish a prima facie failure to accommodate, an employee must show: "(1) she is an individual with disability under the ADA; (2) she can perform the essential functions of her position with accommodation; (3) her employer had notice of her alleged disability; and (4) the employer failed to accommodate her." *Conneen v. MBNA America Bank, N.A.*, 182 F. Supp. 2d 370, 376-77 (D. Del. 2002).

To establish a prima facie case of discrimination, an employee must show: (1) she was a member of a statutorily-protected class; (2) she was qualified for the position; (3) she was aggrieved by an adverse employment action despite being qualified; and (4) the adverse employment action occurred under circumstances giving rise to an inference of illegal discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).[1]

---

[1] "Although courts often state the elements in Title VII cases in such a way as to require the plaintiff to show that he or she was replaced by someone outside of the relevant protected class, such a showing is not always necessary." *Cobetto v. Wyeth Pharms.*, 619 F. Supp. 2d 142, 153 n.3 (W.D. Pa. 2007) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 353 (3d Cir. 1999)).

To establish a prima facie case of retaliation, a plaintiff must show: (1) she was engaged in a protected employee activity; (2) adverse action by the employer occurred either after or contemporaneous with the employee's protected activity; and (3) a causal connection exists between the employee's protected activity and the employer's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

## III. ANALYSIS

### a. Objection 1

The Magistrate Judge concluded that all of Plaintiff's failure to accommodate claims were time-barred. (D.I. 68 at 9-12, 25). Plaintiff objects, arguing that she made a request for accommodation on March 22, 2014, to Cynthia Romero, her Field Manager (*see* D.I. 1, ¶ 29), and that her second charge on July 29, 2014, included the March 22 request. (D.I. 77 at 2-3). It is included. (D.I. 58-5, Exh. NN at 15).

The briefing on the summary judgment motion was focused on the failure to accommodate claims from 2011 (*see* D.I. 54 at 23-24; D.I. 56 at 10-17; D.I. 57 at 10-11; D.I. 58 at 25-26; D.I. 59 at 10-13; D.I. 60 at 2-3), which were time-barred. While there was some mention of the March 22 communication as being part of the continuing violation, Plaintiff never argued that it was a stand-alone violation. The Magistrate Judge only analyzed the arguments presented. No objection is made to that analysis.

Thus, the stand-alone argument is waived. *See TruePosition v. Polaris Wireless*, 2014 WL 4247725, at *2 (D. Del. Aug. 26, 2014). Even if it were not waived, however, the record does not make out a prima facie case for there being a request for reasonable accommodation on March 22. The email to Ms. Romero was in response to an inquiry asking Plaintiff to update and

4

provide an estimated completion date for "ACD cases" for which she had missed the deadline.
Plaintiff stated, in response,

> I was tired, the onset of symptoms of my carpal tunnel began and therefore I
> could not request needed ACD changes. I will be requesting ACD changes for all
> cases on your list with the exception of one. However, I am not doing it right
> now on my personal time. I plan to work tomorrow on what is suppose[d] to be
> my day off to get a much needed head start on some typing for a 5 hour ESI that I
> completed. At that time, I will request the ACD changes.

(D.I. 58-2, Exh. Q). The email explained why Plaintiff was late with assignments. It did not request anything. Plaintiff stated that Ms. Romero did not respond to the email. (D.I. 58-1, Exh. C at 17). The lack of a response to an email stating that Plaintiff would later request "ACD changes" does not make out a prima facie case for failure to accommodate.

### b. Objection 2

Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff's assignment to the Bremerton, Washington TDY was not an adverse employment action that occurred under circumstances giving rise to an inference of illegal discrimination. (D.I. 77 at 3-4). That an adverse employment action occurred under circumstances giving rise to an inference of illegal discrimination can be shown by the presence of "similarly situated individuals who were not members of the protected class [but] were more favorably treated than the plaintiff." *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014) (citing *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 361 (W.D. Pa. 2010)).

Specifically, Plaintiff objects to the Magistrate Judge's conclusion on grounds that Colleen Carey, Plaintiff's white colleague, was excused from the TDY for family reasons, while Plaintiff was not afforded an excusal for family reasons in spite of being similarly situated. (D.I. 77 at 3-4). But Plaintiff and Ms. Carey were not in fact similarly situated. Ms. Carey informed Defendant that she had family obligations and had recently completed a TDY assignment.

5

Plaintiff stated that she preferred to celebrate her birthday with family in Las Vegas—a reason she admits is "[p]ossibly" different from Ms. Carey's—and had not recently completed a TDY assignment. (D.I. 57-1, Exh. A at 243-49). Therefore, I agree with the Magistrate Judge that Plaintiff's assignment to the Bremerton TDY was not an adverse employment action that occurred under circumstances giving rise to an inference of illegal discrimination. Plaintiff thus cannot make out a prima facie case of discrimination.

### c. Objections 3 and 4

Plaintiff objects to the Magistrate Judge's disposal of Plaintiff's claims of discrimination as to her increased workload and to Defendant's ceasing her quarterly performance reviews on the third prong of the prima facie discrimination evaluation—whether the plaintiff was aggrieved by an adverse employment action—because Defendant did not raise the issue. (D.I. 77 at 5-6).

I do not need to reach Plaintiff's objections, because both claims of discrimination can be decided on the fourth prong of the prima facie discrimination evaluation, which was raised in the summary judgment briefing. (D.I. 59 at 4-5). The fourth prong of the prima facie discrimination evaluation is whether there was "an adverse employment action that occurred under circumstances giving rise to an inference of discrimination." *Sarullo*, 352 F.3d at 797. Plaintiff can fulfill this prong by showing the presence of "similarly situated individuals who were not members of the protected class [but] were more favorably treated than the plaintiff". *Mitchell*, 995 F. Supp. 2d at 430. Here, as to both actions, Plaintiff fails to identify similarly situated individuals.

As to Plaintiff's increased workload, the Magistrate Judge correctly noted that Plaintiff was not similarly situated to her colleagues, because she had moved without giving notice to Defendant, but her white male colleagues had not. (D.I. 54-1, Exh. A at 261, 269; D.I. 68 at 19).

Further, many of Plaintiff's complained-of assignments were based on her unique location in Delaware. (D.I. 54-1, Exh. A at 215). Thus, because she was not similarly situated to her colleagues, increases to her workload do not give rise to an inference of discrimination. Plaintiff's objection to the Magistrate Judge's conclusion falls short. (D.I. 77 at 5-6).

Similarly, as to Defendant's ceasing Plaintiff's quarterly performance reviews, Plaintiff argues that Defendant's policy was to conduct quarterly reviews for "all field investigators." (D.I. 77 at 6; D.I. 58, Exh. D at 51-52). But she has not shown that the employees actually receiving quarterly reviews were similarly situated to her, which is her burden. *See Garrow v. Wells Fargo Bank, N.A.*, 2016 WL 5870858, at *4 (E.D. Pa. Oct. 7, 2016) ("It is the plaintiff's burden to identify potential comparators and to put forth evidence that they are similarly situated.") (citing *Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012)). Furthermore, Plaintiff's argument that Defendant provided quarterly evaluations to similarly situated field investigators was not raised in the summary judgment briefing and cannot be raised for the first time in her objections. (D.I. 58 at 15, 19-20); *TruePosition*, 2014 WL 4247725, at *2. Thus, Plaintiff's objection falls short here, as well. (D.I. 77 at 6).

### d. Objection 5

The Magistrate Judge concluded that Plaintiff failed to establish a prima facie case that her transfer to Delaware evidenced discrimination. (D.I. 68 at 17-18). Specifically, the Magistrate Judge found that Plaintiff could not "demonstrate a causal connection that could give rise to an inference of discrimination," because Plaintiff's telling Jenise Fuson about her Carpal Tunnel Syndrome symptoms in May 2013 was not sufficiently close in time to Ms. Parker's March 25, 2014 email to Ms. Orton suggesting that Plaintiff be transferred. (*Id.* at 18). Plaintiff objects, arguing that Defendant's March 25, 2014 suggestion that she be formally transferred to

7

Delaware was in fact the result of discrimination in light of her March 22, 2014 email to Ms. Romero, which notified Ms. Romero of Plaintiff's plan to later request ACD changes. (D.I. 77 at 6-7; D.I. 58-2, Exh. Q).[2]

But Plaintiff provides no evidence showing that the decision-makers knew of Plaintiff's March 22, 2014 accommodation request before transferring her. Plaintiff's March 22 email was sent only to Ms. Romero, and the March 25 transfer decision was made by Kristi Orton and Lauren Parker. (D.I. 54-2, Exh. K at 51-52). Thus, Plaintiff's objection falls short, and I adopt the Magistrate Judge's conclusion.

### e. Objection 6

Plaintiff makes three objections to the Magistrate Judge's conclusion that she failed to raise a prima facie case of retaliation.

First, Plaintiff objects to the Magistrate Judge's conclusion that there was no causal connection between her protected activities and her termination sufficient to establish a prima facie case of retaliation. (D.I. 77 at 7-8); *see Clark Cnty. Sch. Dist v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between the plaintiff's protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). Plaintiff argues that the temporal proximity between both a March 22, 2014 email and a November 8, 2013 grievance submission, and her April 16, 2014 termination shows a causal connection between both protected activities and her termination. (D.I. 77 at 7-8). However, "the Third Circuit has not found any period longer than three weeks so unduly suggestive of retaliatory animus . . . to

---

[2] Defendant once again objects on the basis that Plaintiff did not make this argument in the summary judgment briefing. There, she cited five documents (D.I. 58 at 16) for her argument, none of which is the email to Ms. Romero. (D.I. 58-3, 58-5). Defendant is therefore correct.

8

establish causation without other evidence." *Carey v. Nat'l Event Servs.*, 2015 WL 667519, at *7 (E.D. Pa. Feb. 13, 2015). Because the period between the March 22, 2014 email and April 16, 2014 termination and the period between the November 8, 2013 grievance and April 16, 2014 termination both extend beyond three weeks, and Plaintiff provides no such "other evidence," Plaintiff's objection fails.

Second, Plaintiff objects to the Magistrate Judge's conclusion that there was no causal connection between her protected activities and the failure to provide performance reviews sufficient to establish a prima facie case of retaliation. (D.I. 77 at 8). Plaintiff argues that the temporal proximity between Plaintiff's March 17, 2011 and May 3, 2011 accommodation requests and missed May 1, 2011, July 28, 2011, and October 29, 2012 performance evaluations shows a causal connection between the two. (D.I. 77 at 8). But Plaintiff cannot deny that she received a 2011 performance evaluation in or near May 2011 given that she quoted from it in a July 7, 2011 letter. (D.I. 54-2, Exh. I at 30 (discussing evaluations for various quarters, including the "review period of 01/01/11 to 03/31/11")). Thus, the temporal proximity between the requests and the adverse action is much greater than three weeks. Because Plaintiff does not provide other evidence, she does not establish causation sufficient to raise a prima facie case of retaliation, and her objection fails.

Third, Plaintiff objects to the Magistrate Judge's conclusion that Plaintiff cannot establish a causal connection between her November 2012 Equal Employment Opportunity Commission Charge and Stephen Mullane's reassignment of work to her sufficient to establish a prima facie case of retaliation. (D.I. 77 at 9; D.I. 68 at 23-24). Now, Plaintiff argues that her first, November 8, 2013, grievance about Mr. Mullane in fact caused the reassignment. (D.I. 77 at 9). However, the reassignment of work by Mr. Mullane began before Plaintiff's first grievance—

indeed, Plaintiff's grievance was in response to these reassignments. (D.I. 58 at 9). Therefore, Mr. Mullane's actions were not retaliatory, and the Magistrate Judge's conclusion was correct.

### f. Objection 7

To establish a prima facie case of hostile work environment, a plaintiff must demonstrate "severe or pervasive" intentional discrimination because of a protected classification. *Garnett v. Bank of America*, 2017 WL 1074358, at *5 (D. Del. 2017) (citing *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996)); *Hemphill v. City of Wilmington*, 813 F. Supp. 2d 581, 587 (D. Del. 2011) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). Because I have already concluded that Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claims should be granted, Plaintiff cannot make out her prima facie case, and Defendant's Motion for Summary Judgment must be granted here, as well.

### g. Objection 8

Likewise, I agree with the Magistrate Judge's conclusion that Defendant's motion for summary judgment on the breach of the covenant of good faith and fair dealing claim must be granted. (D.I. 68 at 26-27). To the extent that Plaintiff objects to the Magistrate Judge's failure to evaluate the kind of violation where the employer falsified or manipulated employment records to create fictitious grounds for termination, that argument fails. The records allegedly falsified or manipulated did not serve as the grounds for Plaintiff's termination. Rather, Plaintiff's failure to call into a teleconference served as those grounds. (D.I. 68 at 6-7); *see Saunders v. E.I. DuPont de Nemours and Company*, 2017 WL 679853, at *9 (D. Del. 2017) (citing *E.I. DuPont de Nemours and Company v. Pressman*, 679 A.2d 436, 441-44 (Del. 1996)) (listing where an employee can bring a claim for breach of the implied covenant of good faith

10

and fair dealing); *Equal Employment Opportunity Comm'n v. Avecia, Inc.*, 151 F. App'x 162, 165 (3d Cir. 2005) (holding that particular claims must be the actual grounds for termination).

## IV. CONCLUSION

For the reasons discussed above, the Report and Recommendation (D.I. 68) is **ADOPTED**. Plaintiff's motion for summary judgment (D.I. 53) is **DENIED**; Defendant's motion for summary judgment (D.I. 55) is **GRANTED**. A separate order will be entered.

Entered this 27 day of November 2017.

*[signature]*
United States District Judge